IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARROLL L. ROSE, )
 )
       Plaintiff, )
 )
vs. ) Civil No. 16-cv-926-JPG-CJP
 )
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
 )
       Defendant.[1] )

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Carroll L. Rose seeks judicial review of the final agency decision denying her claim for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in November 2012 alleging disability beginning on January 1, 2009. After holding an evidentiary hearing, Administrative Law Judge (ALJ) John A. Peebles denied the application in a written decision dated January 26, 2015. (Tr. 10-18.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.)

Plaintiff has exhausted administrative remedies and has filed a timely complaint.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

(1)     The ALJ's residual functional capacity (RFC) assessment was not supported by substantial evidence because the ALJ rejected all medical opinions and did not explain the basis of his specific findings as to functional limitations.

(2)     The ALJ erroneously rejected Plaintiff's subjective complaints, in violation of SSR

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

16-3p and SSR 96-7p, because he inconsistently found Plaintiff to be both credible and not credible, drew unreasonable inferences from Plaintiff's minimal activities of daily living, and improperly relied on Plaintiff's part-time work, and further erred in failing to assess the "other source" evidence per SSR 06-3p.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565,

568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the

Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Peebles followed the five-step analytical framework described above. He determined that plaintiff had worked part-time since the alleged onset date, but her work did not rise to the level of substantial gainful activity. She was insured for DIB only through December 31, 2010. He found that plaintiff had severe impairments of asthma and osteoarthritis of the hands and hips, which did not meet or equal a listed impairment.

The ALJ found that Ms. Rose had the RFC to perform work at the light exertional level with some physical limitations including a limitation to only frequent use of her hands for fingering or handling objects. Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff could not do her past relevant work, but she was not disabled because she was able to do other jobs which exist in significant numbers in the local and national economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Ms. Rose was born in 1960. She had just turned 50 years old on her date last insured, December 31, 2010. (Tr. 191.) She had worked in the past as a bartender/cook and as a laborer for a sheet metal roofing business. After her alleged date of onset, she worked part-time at a produce stand through October 2012. (Tr. 212-15.) She made about $650.00 per month. She stopped working because the produce stand closed down. (Tr. 183.) Based on her earnings, the agency determined that this work was not substantial gainful activity. (Tr. 189.)

## 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the hearing in December 2014. (Tr. 25.)

A prior hearing had been held, but the recording was lost. (Tr. 26.) The ALJ read some of his notes from the prior hearing and asked plaintiff to confirm them. (Tr. 30.) With regard to the produce stand job, the ALJ's notes indicated she worked there one or two days a week, four or five hours a day. She sold produce, bagged produce, made change and sometimes lifted 25-pound boxes. At the prior hearing, she said that if she lifted 25 pounds, she could not use her hands for three days. (Tr. 32.)

The ALJ stated that the date last insured was December 31, 2010, so the evidence should focus on plaintiff's condition before that date. She said that, as of her date last insured, she could not twist her arms and had pain all the time in her wrists and fingers. Because of her hip pain, she could not sit on the floor or cross her legs. She got some relief from a September 2010 injection in her hip. (Tr. 34.) Her medical records say she was exercising in February 2010. She said she was walking for a quarter of a mile. She was not doing sit-ups or lifting weights. The most she could lift in December 2010 was five to ten pounds, using both hands. (Tr. 36-37.) She walked because the doctor told her to walk to help her joints. (Tr. 44.)

Plaintiff stopped working at her bartender/cook job in 2007 because of pain and lack of strength in her hands. She also had problems standing and walking because of pain in her feet and hips. (Tr. 38-39.) She was diagnosed with osteoarthritis in her hands in 2002. Her hands hurt, but she continued working as long as she could. She was divorced and had to work. (Tr. 39-40.)

Plaintiff started working at the produce stand in 2009. She unpacked tomatoes, but she had to use both hands to put them on a tray and put the tray on the counter. She oversaw phone calls and ordering but could not physically run the cash register or give change, and she could not

lift up the items for the customers. She worked on Thursday, Friday and Saturday. The owner was a friend who was helping her out. He let her sit down when she needed to and did not let her lift anything. Another employee ran the cash register and did the lifting. (Tr. 40-43.)

She had no mental health treatment before December 31, 2010. (Tr. 52.)

A VE also testified. She testified that plaintiff had not acquired any skills that would transfer to a sedentary job. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment. The VE testified that this person could not do plaintiff's past work but could do other light jobs that exist in significant numbers in the economy. Examples are price marker and mail clerk. (Tr. 56-58.) If she were limited to sedentary work with the same limitations, she could do the jobs of document preparer and telephone quotation clerk. (Tr. 59.)

The VE also testified that, if the person were limited to only occasional, as opposed to frequent, fingering and handling, she would still do jobs at the light exertional level such as tanning salon attendant and furniture rental clerk. However, there would be no jobs at the sedentary level that she could perform. (Tr. 60-61.)

**3.  Medical Records**

Ms. Rose lived in Tennessee during the period at issue and received her medical treatment there.

X-rays taken in 2002 showed osteoarthritis of the distal interphalangeal joints and proximal interphalangeal joints in multiple digits on both hands. (Tr. 259.)

She was treated by Dr. Hunt as her primary care physician until October 2010. She alleges she became disabled as of January 1, 2009. She was seen in March 2008 for contact dermatitis and asthma. The next visit was on September 10, 2009, when she was seen for joint and muscle pain. She had a long history of some arthritis. On exam, she had good range of

motion and good strength of all extremities, and some arthritis swelling of the finger joints. She was prescribed Relafen and Flexeril. (Tr. 278-79.) In October, she was switched to Lortab because Relafen caused swelling. Most of her pain was in her hips and fingers. (Tr. 280-81.) She came in for a refill of Lortab in February 2010. The note states that she "does exercise routinely." Lortab and Flexeril helped control her pain. She was also taking Cymbalta, which helped with her "nerves." The diagnoses were osteoarthritis, depression, asthma and allergic rhinitis. (Tr. 284-85.) In August 2010, her arthritis was "still bad especially in hips." Lortab was not relieving her pain. She also wanted to try to get off Cymbalta. She was to try Naprosyn. She was given a shot of Depo Medrol in her hip. (288-89.)

Plaintiff was seen by an orthopedic specialist, Dr. Haltom, in September 2010 for bilateral hip pain. X-rays showed significant osteophytes of the acetabulum and humeral head, more pronounced on the right. She was 5'3" and weighed 150 pounds. She had hip pain on exam. Dr. Haltom diagnosed bilateral hip osteoarthritis and recommended injections. (Tr. 301.)

Plaintiff was last insured for DIB as of December 31, 2010.

A note from the Tennessee Department of Health, Bureau of Health Services, from March 2011 indicates that she was no longer seeing Dr. Hunt because she had no health insurance. She was taking Lortab that had been prescribed by him for arthritis. (Tr. 362.)

## Analysis

The Court turns first to plaintiff's argument regarding the ALJ's assessment of her subjective complaints.

Plaintiff argues that SSR 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16, 2016), is applicable here. SSR 16-3p supersedes SSR 96-7p and became effective on March 28, 2016. *See* 2016 WL 1237954 (Mar. 24, 2016) (setting forth

effective date). SSR 16-3p eliminates the use of the term "credibility" and clarifies that symptom evaluation is "not an examination of an individual's character." 2016 WL 1119029, at *1. However, SSR 16-3p continues to require the ALJ to consider the factors set forth in SSR 96-7p, which are derived from the applicable regulations. 2016 WL 1119029, at *5. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

The ALJ's decision is dated January 26, 2015, more than a year before the effective date of SSR16-3p. Plaintiff argues that the new SSR should be applied because it is a clarification and not a change to existing law. She is correct that new rulings that are clarifications to existing law are applied retroactively. *Pope v. Shalala*, 998 F.2d 473, 482-83 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999). However, she goes on to make the contradictory argument that "[b]ecause the Agency ceased using a 'credibility' determination process with SSR 16-3p, any 'credibility' standard, including this Circuit's 'patently wrong' standard, is not applicable." Doc. 12, p. 13. It is difficult to see how SSR 16-3p could be a mere clarification of existing law and could, at the same time, serve to invalidate all of Seventh Circuit law regarding the ALJ's assessment of the claimant's statements. In the end, it does not matter whether the old or the new SSR is applied because the ALJ's assessment of plaintiff's subjective complaints was erroneous under either.

Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the

objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).

Here, ALJ Peebles focused on plaintiff's part-time work at the produce stand. He wrote, "Although the claimant did not perform substantial gainful activity at the produce stand, her ongoing work activity for more than three years after her alleged onset date destroys the credibility for her disability claim." (Tr. 15.)

Plaintiff testified that the owner of the produce stand was a friend and that he accommodated her limitations in that job. The ALJ acknowledged that testimony but apparently thought it was outweighed by a work history report in which plaintiff admitted lifting heavy boxes and operating the cash register. (Tr. 15.)

The regulations provide that, if a person is doing substantial gainful employment, she is not disabled. 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience."). Plaintiff's work at the produce stand was part-time, and the agency determined that it did not rise to the level of substantial gainful employment. Leaving aside the question of whether she did only the lighter tasks, an ability to do part-time work does not give rise to a presumption that a claimant is not disabled. "There is a significant difference between being able to work a few hours a week and having the capacity to work full time." *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010).

Plaintiff testified that she had to work because she was divorced and had to support herself. (Tr. 40.) Even if the ALJ did not believe plaintiff's testimony that her friend and employer accommodated her physical limitations on that job, it seems that plaintiff worked at the produce stand out of need. The fact that a claimant "pushed herself to work part-time and maintain some

minimal level of financial stability, despite her pain, does not preclude her from establishing that she was disabled." *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013). "A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working." *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005).

The ALJ also relied on the notation in the medical record that she "exercised regularly." (Tr. 15.) The medical record did not elaborate on what kind of exercise she did. When the ALJ questioned her at the hearing, she said she walked for about a quarter of a mile. (Tr. 36-37.) The ability to walk for a quarter of a mile did not contradict her claim of being disabled from full-time employment.

Plaintiff's first point is also meritorious, although the Court does not accept her argument based on *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010). *Suide* does not stand for the proposition that an ALJ's RFC assessment must rest upon a healthcare provider's opinion. The rule is, in fact, to the contrary. The ALJ "must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions. . . ." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The determination of RFC is an administrative finding that is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). The error in *Suide* was not that the ALJ did not rely on a doctor's opinion to assess RFC; rather, the error was that the ALJ failed to discuss significant medical evidence in the record. *Suide*, 371 F. App'x at 690. Here, plaintiff does not point to any significant medical evidence that was ignored by the ALJ.

However, the Court agrees with plaintiff's argument that the RFC assessment was erroneous because the ALJ failed to build the required "logical bridge" between the evidence and

his conclusion.

The ALJ found that plaintiff was capable of light work limited to, as is relevant here, only frequent fingering and handling.

Light work requires lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." Light work may also involve sitting most of the time with some pushing and pulling of arm or leg controls. Sedentary work requires lifting no more than 10 pounds at a time and only occasional standing or walking. The agency defines occasional as "occurring from very little up to one-third of the time." Frequent is defined as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *5-6 (1983); 20 C.F.R. § 404.1567(a) & (b).

Plaintiff was 50 years old on her date last insured. This is categorized as a person "closely approaching advanced age." 20 C.F.R. § 404.1563(d). The ALJ incorrectly classified her as a "younger person." (Tr. 16.) A 50-year-old claimant who is limited to unskilled sedentary work is deemed to be disabled even if she is able to do the full range of sedentary work. Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, Rule 201.12. Therefore, the issue of whether plaintiff was limited to light or to sedentary work is crucial here.

The ALJ did not assign any limitation in plaintiff's ability to walk or stand. The jobs he found plaintiff capable of doing, price marker and mail clerk, would not seem to require pushing or pulling of arm or leg controls. *Dictionary of Occupational Titles*, § 209.587-034, 1991 WL 671802 & § 209.687-026, 1991 WL 671813 (4th ed. 1991) (defining those jobs as requiring (1) walking or standing to a significant degree or (2) pushing and/or pulling of arm or leg controls).

Since the jobs did not involve pushing or pulling arm or leg controls, the ALJ must have found that she had the ability to stand or walk for 6 hours out of the workday. The ALJ categorized the arthritis of her hips as a severe impairment and limited her to only occasional climbing of stairs and no movements such as stooping or kneeling. He did not explain why the evidence supported those limitations but still allowed her to stand or walk for 6 out of 8 hours every workday. He also did not explain the basis for his conclusion that the arthritis in plaintiff's hands limited her only to frequent, as opposed to occasional, fingering and handling.

The ALJ's failure to explain how the evidence supported his RFC findings requires remand. An RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The failure to do so warrants remand. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The Court appreciates the difficulty presented by this case because it requires the ALJ to determine plaintiff's RFC as of a date in the past, with little medical evidence during the relevant period. It might be advisable in these circumstances for the ALJ to enlist the services of a medical expert.

Because of the ALJ's errors in evaluating plaintiff's subjective statements and in determining her RFC, this case must be remanded. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) ("[A] a denial of benefits cannot be sustained where an ALJ failed to articulate the bases of his assessment of a claimant's impairment.")

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinion in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

**Conclusion**

The Commissioner's final decision denying Carroll L. Rose's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATE: August 17, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**